Can you see okay Mr. Kim now? Is it okay for you? I can look over here. Okay. Okay. Alright. And so each side has 15 minutes. And that means 15 minutes total for the appellants. So we'll start with the we'll start with the appellants in this matter. Good morning. Robert Kahn, Deputy Corporation Counsel for the City and County of Honolulu. And I'd like to reserve five minutes of my time for rebuttal if I may. The issue today is whether the three police officer appellants, Christine Nevis, Warren Ford, and Corey Peres, are entitled to qualified immunity based on the allegations in the Second Amendment complaint and the drawing that is referenced dozens of times in that Second Amendment complaint. That drawing is currently filed in the appellate record under seal, but the officers requested it now be publicly filed in the form of the high resolution redacted version that was publicly filed in the district court last week on June 5th with the agreement of council. The public has a right to see this threatening drawing at the heart of the appeal. So I had a quick question about that. Have you supplied that to the court? I have not yet because there's a pending motion to be able to file a redacted that was taken under advisement, I guess. You filed a pending motion to file a redacted version, but we haven't yet seen that, have we? No. And through working with opposing counsel, if one is to be filed, if that were the ruling, I think our agreement would be, they requested and we got it from Honolulu Police Department, a high resolution version with the names redacted. And so if there's something, if it's going to be filed in the appellate record, from the counsel's point of view, I think by agreement we would prefer that it be the high resolution version with the names redacted. But I think what's filed in the appellate record now is the low... I've seen something. I've seen something. Some drawing. But I'm not sure the names are redacted on that or sufficiently redacted. So I had a couple procedural questions before you get into the substance of your argument. We're dealing here with motion to dismiss, correct? On the second amended complaint, yes. Yes, right. Your qualified immunity claims are directed to a complaint and so we're dealing with a 12B6 motion to dismiss, correct? Yes. Not a summary judgment motion. No, although one has been filed. Now you're taking me down the trail I'd like to follow. One has been filed and your filings tell us that it's pending in the district court. If the district court rules on the summary judgment motion one way or the other, would it moot this appeal? In advance of us ruling. Well, let me answer it this way. First of all, it still hasn't been scheduled for hearing and it's likely, in my experience, the Ninth Circuit often will get, after oral argument, will get an opinion out in, I don't know, something like a month. And so I think just in probability, this opinion would come first. It would be on the second amended complaint and if qualified immunity were granted on either of the claims for either of the officers, any of the officers, that would bind. I understand that, but that's not the question I asked you. I agree that if we find qualified immunity on either of the claims or any of the officers, the summary judgment motion would be mooted as to whether those claims are of those officers. My question is, what if the district court is quicker than we are? Isn't your appeal mooted? I would say not. Often, I've seen this a few times in the case law where they get consolidated, but if the judge, as we might guess, since she doesn't like qualified immunity, if she denies qualified immunity, we will appeal that one too. And then if your opinion is not out yet as part of your question, then you have these two appeals. The premise of my question is, if we were reviewing a summary judgment motion, we wouldn't be reviewing the sufficiency of the pleadings, but rather whether or not, based on the submissions made to the district court, there's a material issue of fact. And now what we're doing is taking the elements of the complaint into light most favorable to your friend. So I would think, however the district court stuff comes out on summary judgment, since you lost on the motions to dismiss, you would much prefer us to be reviewing a summary judgment ruling where you've made submissions. So I'm trying to figure out why you want us to address this case when you probably will have a full record after the district court rules to address the issue. Well, the Supreme Court has said that qualified immunity should be raised early in a case. You shouldn't have to, it's immunity from trial, but also the burdens of the pre-trial matters, including discovery. Now all of that was denied. The case is where it is at this point. So I mean, I share the same question. I understand that, but we are where we are. And I too would have thought that you would just want to wait for summary judgments. I can't understand what we're doing. Go ahead. Well, we timely appealed the denial of qualified immunity based on the allegations in the second amended complaint. And I am prepared to argue while we think that's correct, and they are entitled to qualified immunity. If they're entitled to qualified immunity on the second amended complaint, they should get out of the case. The case can go on I entirely agree with your point, but the reason I raise this is you're the one who came to us and said we should put this off, right? Well, that was a denied motion. Yeah, we denied the motion because we wanted frankly, we wanted to be able to talk about all this with you in the courtroom. So you came to us and said put this off until the summary judgment motion is ruled on. Then you can come back to this case and deal with it then. And I guess one of the things that was attractive to me about your motion, which hasn't been denied in all time or for perpetuity, I suppose, is that it would be better to review this on a summary judgment record rather than simply on the complaint. So I understand that you're saying the officers are entitled to a prompt resolution, but you're the one who asked us not to arrive at a prompt resolution. The other side objected, I think. And now you're basically saying if I'm going to win, go, go, go, go. If I'm going to lose, wait, wait, wait. But we have to look at the motions for, you know, it's obviously by the time we got the motion, you know, some people might dispute how well prepared we are, but we were already well prepared to hear this case by the time we heard from the parties. You're, you know, asking us to continue it. But I suppose, can we go to the merits then, I guess? At this point, we know what the reasons are, I suppose. We have our reasons. Okay. So, all right. Let's assume there isn't any case that specifically says that you can't arrest a 10-year-old for a drawing like this, if there's not specifically a case. Could this be argued it's just one of those situations that every, well, I mean, obviously if it were a 2-year-old that made a drawing, we'd probably say you can't handcuff a 2-year-old, right? We wouldn't need a case for that. Well, that's definitely a different hypothetical, Judge Callahan. Well, but at some point, the age here, you know, I think there's I mean, arguably there isn't a specific case that says you can't arrest a 10-year-old under these circumstances. And your argument, I guess, is so they're not unnoticed, right? So then they're entitled to on the second prong of qualified immunity. Am I getting it wrong? That's correct. But probably, if we went low enough, it might not need to have a case for a reasonable officer to say we can't handcuff, you know, we don't need to handcuff a 4-year-old, we don't need to handcuff a 6-year-old. I mean, why wouldn't a reasonable, why wouldn't this be the case because it was a 10-year-old? Well, I think we're here under the qualified immunity analysis. And if what you're saying is that there's a certain low age where, then you're falling into the obvious exception, basically, to qualified immunity. And the court has said multiple times that that's a very rare situation. So, the District Court and the appellees argue that this is an obvious case. And then they cite authorities for that. But those authorities are not clearly established law for a case where someone is being put under arrest for threatening conduct. What about Sonora? Why isn't this case like the Sonora case? You had there an 11-year-old compliant, although non-responsive. Sonora was never placed under arrest and there was no threatening behavior involved in that case. Was there threatening behavior here at the time of the actual handcuffing? Well, at the time of the handcuffing, she was under arrest for based on the probable cause to arrest based on the drawing. Assume that to be true. Assume that they had probable cause to arrest her based on the drawing. Is it your position that no matter the age of the perpetrator, the officers are entitled to handcuff the perpetrator? Unless you're prepared to find that it's an obvious case, which Sonora said that's an obvious case. Sonora tells us that handcuffing, we're talking about excessive use of force now, we're not talking about probable cause to arrest. Handcuffing a compliant 10-year-old is excessive force. And here we have the only difference, I think, is that this person is, for purposes of my question, justifiably under arrest. So I take it your position has to be that the fact that she is under arrest makes CB not clearly established law. Correct, Judge Hurwitz. Therefore, your position is that there is no clearly established law that would prevent the handcuffing of no matter how compliant a person of this age once she is arrested. If I may answer that by quoting Graham 35 years ago, the right to make an arrest necessarily carries with it the right to use some degree of physical coercion to affect it. Nobody doubts that. The question is whether it's an excessive degree of restraint. Nobody doubts that they had the right, for purposes of my question, to arrest this young woman, put her in the back of a police car, and take her to the police station. I understand your friend will argue that point. My question is, there must be at some point at which the amount of restraint put on her in that car is excessive. You do agree that they couldn't tape her mouth and eyes and put shackles on her when they put her in the back of the car. So the excessive force principle does apply to people even after they're properly arrested and being transported. I'm trying to figure out what the limit of your argument is. There's case law kind of two branches of case law. One is when you have arrest, and if it's a routine handcuffing, that's usually permitted. To actually get to a jury on that, the Ninth Circuit requires medical records. And here, there's no allegations of pain, only allegations that it left marks. So I think the excessive force claim fails. Two of the members of the panel that I'm speaking to right now expressly rejected the argument that mere handcuffing violates the Fourth Amendment. In the context of a juvenile? I'm not sure it was the context of a juvenile. Yeah, I don't think so. I'm confused about if this was a misstatement or whatever, that supposedly they put adult cuffs on a 10-year-old, but they're saying that they're too tight. That seemed like the opposite of what it would be like if you put child handcuffs on an adult. You could see why they would be too tight. It seemed like adult handcuffs would just sort of hang. Was that a misstatement in the record, or is that correct? Well, there's the facts as we know them after discovery is closed, and then there's the allegations in the Second Amendment complaint. So in the Second Amendment complaint, it said they left marks. It doesn't say pain. It said left marks. That's actually quite common with handcuffs. They leave marks. So we know what's in the record and what she testified in her deposition, but that's not technically before you today. I can answer the question, but the Fourth wasn't heard. Do you accept the fact that technically, and I'm just saying this hypothetically, because we have not conferenced on the case, that we could find that the officers are entitled to qualified immunity on probable cause to arrest, but they're not entitled to qualified immunity on excessive force. Just because you find on one doesn't necessarily follow that you find on the others, right? I agree with that, Judge Callahan. Qualified immunity is claim specific. So you're entitled to it claim by claim, and the court could conclude, if that's the court's conclusion, qualified immunity should apply as to probable cause to arrest, and if the court so found that qualified immunity does not apply on the excessive force claim, that's what the case law holds. Okay. Do either of you have any questions? Okay, I'm going to give you some extra time on rebuttal because we took a lot of time talking about this motion to stay, to continue, or whatever it was. So I'll give you three minutes for rebuttal. All right. We're ready to hear from the appellee. Good morning. Good morning. May it please the court, my name is Wookie Kim. I represent plaintiffs, appellees, Enby, and Tamara Taylor. You've heard a lot of talk today about the drawing. The drawing that, in the officer's view, justified everything that occurred to Enby, who was a 10-year-old child with a disability. It justified the handcuffing, and it justified her arrest for terroristic threatening. But the constitutional inquiry doesn't focus on the drawing, it focuses on the officer's conduct. Was there a... I think this would be a different case if, say, when I was growing up, if kids drew things that, regardless of how threatening they look, I think it would be a different case, because I didn't grow up at a time where kids came to school and shot people, or, you know, where kids brought weapons to school, as far as that. That was not a part of my existence. So part of the world we live in now, when things are threatening, it does put schools in a different position about what they have to do, and it's not unheard of for young children to have access to weapons or whatever. I don't know, the drawing that I saw was pretty threatening, pretty graphic. With a head cut off, and all of that. I think your Honor's question gets to the issue of whether the drawing was objectively a true threat, and there are some critical facts that are alleged in the complaint that undermine the idea that anyone was afraid of something happening, and the most important fact on this point is that the school administrators received the drawing the day before everything happened. If the administrators truly believed that Enby had some ability to carry out or follow through on this threat, they would have called the police as soon as they received the drawing. We really can't decide whether a true threat was posed by the actions of school administrators, at least on the face of by the actions of school administrators. They did nothing, and then someone comes and mows the school down. We've had a bunch of really bad history recently about school administrators not recognizing threats. I would point this Court to the case law around true threats, and in particular, we're talking about terroristic threatening under the law, both starting from three decades ago in State versus Chung, the Hawaii Supreme Court made very clear that there's only one type of threat that can be prosecuted, and that's a true threat, and as far as how they defined what that meant, the threat has to, according to the language and context, convey a gravity of purpose and likelihood of execution. It also needs to be so unambiguous and have such immediacy that it convincingly expresses an intention of being carried out. Let's assume you're right. It seems to me that if we were reviewing a guilty verdict in a true threat crime prosecution, you'd have a great argument, but here we're reviewing the actions of police officers arresting EB. Okay, so what case tells them that under this circumstance, and I'm not really worried about the nature of the charge, they may have charged her with the wrong offense, that they don't have probable cause to detain her. When they get her to the police station and everything gets sorted out, a smart prosecutor looks at this and says, I don't think this is enough evidence to go forward, so I'm going to dismiss it, but that's not their standard. The standard for us is, is there a case with facts like this one, or somewhat like this one, that tells them they can't detain her? So, we don't have a case involving a drawing, but that said, the case that is most analogous here is In Re P.P. And again, we have to understand that it's not just any sort of threat that can be charged or arrested for, it has to be a true And this juvenile got really upset after she was punished, he was punished, for not completing his chores. And as a result, he got really upset, he started punching the couch, he started threatening to kill one of the counselors, and the court held that that was not a true threat, it was merely an expression of childish feelings. And this goes to, I think, what the court has already identified as a factor that maybe distinguishes this case from kind of the general Fourth Amendment jurisprudence, which is the age. We're talking about a 10-year-old child. We're not talking about an adult, and there are questions about how these doctrines apply in that context. And in In Re P.P., that court made very clear that even if a child says really threatening things, and is using physical aggression alongside, that is not enough. There you're talking about a child acting out physically and making threats toward an adult. Here you have a child allegedly making threats toward another child, different context, not a youth shelter or school. The court has said that we can't look at qualified immunity at a high level of generality. It has to be pretty close to the particular facts of the case. But that's the best way. Well, so let me take a step back. What's very clearly established under the law in Gasho, Gasho v. United States, is that when a crime has a specific intent element, an officer needs probable cause as to the intent element. And here, there's either the intent to terrorize or the reckless disregard. And based on the facts that are alleged in the complaint,  no reasonable officer knew was created by multiple elementary school children in the context of a squabble over boyfriends that involved the pouring of ranch dressing. No reasonable officer could conclude that that drawing by itself constituted any meaningful threat. Again, we're not talking about a situation like the State v. Chung case, where a teacher talked to four other teachers and said, I'm going to end my life soon. I'm going to shoot the principal first. And not only that, he brought his loaded firearm, pulled it out of his waist, put it on the table in front of the teachers. That was sufficient to charge and prosecute for terroristic threatening. A single piece of paper without any other accompanying conduct. You have an upset mother of one of the people that's there demanding that she be arrested. You've got all this fury. The parents are all necessarily upset. One, because she believes her daughter's been threatened. The other, because her daughter is the subject of this. I think there was some discussions about when an apology wasn't accepted and some ranch dressing got thrown on stuff, and then possibly a slap, which I think, I believe, can be denied, but somewhere there was a slap in all of this. So why can't they just get the child away from everyone else, figure out what happened, and then when they decide, okay, I think we've calmed the situation down and let her go, why don't the officers have a decent argument about we could arrest her and take her and maybe not such a decent argument about handcuffing a 10-year-old in the back of the car? Aren't they distinct arguments? They are distinct arguments, and I would agree with this Court that on the excessive force claim, you know, CB versus City of Sonora clearly establishes that you cannot use handcuffs on a calm and compliant 10-year-old or 11-year-old. And, of course, also Judge Hurwitz's decision in Scott versus County of San Bernardino clarifies that you can't make an arrest to prove a point to minors. And that's exactly what is alleged here, because it's not just the threat that motivated the arrest in this case. NB made statements to the nurse about wondering what it would like to spend a night in jail. After that statement was conveyed to the officers, they said that she was treating the situation like a joke. And as she was being arrested, one of the officers said to the other, oh, so she wanted to see what it would be like to spend a night in jail. That shows that this arrest was not based on any actual real threat. It was the officers trying to teach NB a lesson. And the Scott versus... Or they could think that she might be more That's another way that you could look at it, too. That she just doesn't care. She doesn't think it's a big deal. She's not afraid of authority. And, you know, if they had been convinced showing up, okay, she's a pretty compliant kid. She seems to be afraid of authority, as opposed to a 10-year-old that could give a hoot about anything. And anyone that's had a 10-year-old child doesn't usually think they're that rational. And so if they feel like they don't care about the consequences of anything, that they really might hurt someone. Couldn't you look at it that way? I don't think you can rely on a single piece of paper to conclude that a true threat exists. Because, again... And you're arguing that you can't rely on this piece of paper. I mean, surely if you sent me a note right now that said, Judge, I'm going to... As you leave the bench today, I'm going to hit you over the head with a hammer and kill you. Your days are numbered. That piece of paper would suffice, I think, to at least give me some reason to think there was a true threat. It's not that it's a piece of paper. Your argument is that it's a piece of paper drawn by a 10-year-old. Drawn by a 10-year-old in the context of a school squabble over boyfriends. And involving the pouring of ranch dressing. And the only case that the parties have raised that involves a threatening drawing is actually a case that we did not rely on. It's Porter versus Ascension Parish School Board. That case involved a threatening drawing. And even though appellants rely on the case, the court actually concluded that the drawing was protected by the First Amendment. Now, we don't have a First Amendment claim here, but the point is a drawing by itself, you know, there are a lot of reasons why we should be very careful, or why this court should be... Everything you're saying makes sense to me. We're under a qualified immunity regime, which tells us, first of all, all the officers have to have is probable cause, and that's something less than is required to convict. And second, there's got to be some case, relatively close on the facts, that alerts them to the fact that they don't have probable cause. And it's that second one that I'm having great difficulty with, given the fact that the Supreme Court routinely slaps us around, and we don't have a case closely on point, and they say you're reasoning from generalities. So, again, what's your best case on prior law on the arrest, not the excessive force claim? I think, again, we're going maybe too specific, and here, what we're talking about is the right of an arrestee not to be arrested without the officers having probable cause as to the intent to terrorize, and as to the drawing being a true threat. And Gasho establishes that they needed to have probable cause as to Enby's intent. They did not... There's nothing in the... Part of the problem here, of course, is that, as the panel has noted, we are here purely based on the allegations in the complaint, and these questions about what the officers knew and when, those are highly factual questions, and that makes it kind of difficult to sort of speculate about what they knew or didn't know. This leads me to the question that you can't answer, but I want to pose it to you as I posed it to opposing counsel. You've got a summary judgment motion pending. We'll have our ruling at some point from the district court based on the motion. Why should we proceed today? This court doesn't need to proceed today. You objected to putting it over after arguing the case was moot. Understood. I can explain that. Our clients want to proceed to trial. We want a resolution of this case. Early on, once we realized what issues the appellants were going to appeal, we moved to dismiss on the basis of mootness. But of course, much time has elapsed. Things have evolved, and at this point, we recognize that this court's guidance could provide clarity and narrow some of the claims, even though there is a third amended complaint. And for that reason, this... Well, and arguably, there's also the argument that once this was filed, that the district court maybe didn't even have jurisdiction to keep ticking along. I think if we find it wasn't prejudicial, then we could allow it to maintain its status. But I think the interlocutory appeal interrupts jurisdiction. I would disagree. I acknowledge that the Griggs divestiture principle is a principle. However, it clarifies that it only divests jurisdiction of the subject matter of the appeal. And here, the process of amending the complaint was not subject to the appeal and remained properly with the district court. And importantly here, the order at issue granted plaintiffs leave to amend the complaint. And that distinguishes this case from the other cases that appellants rely on to claim that the appeal... Correct me if I'm wrong. Then there was discovery. Then there's now the dispositive summary judgment motion. So this has just been going on like we don't exist, right? To some degree, yes. I'm not insulted by that. But it's perplexing. I think that's why we all have so many questions of both of you. Sometimes you feel like you're deciding something, but everyone else knows more than you do. Right. So I see my time is expiring. Let me put this differently because I want to be clear that both sides understand this. The case is in front of us and we can decide it, but your opponent asked us to defer it until summary judgment was disposed of. We turned down that motion, in part because you opposed it. And the reason I'm asking the question is on sober reflection, you may decide that you really would rather wait until summary judgment. And if so, then you all can let us know. Understood. I think it sounds like this court is concerned about the false arrest claim more than the excessive force claim. And again, I would point to the briefing, our briefing around true threat and the INREPP case, the State v. Valdivia case, and the State v. Chung case. And I think that will help clarify why this case is very different from other cases where terroristic threatening prosecutions have been filed. And unless the court has any further questions, I'll stop there. Thank you for your argument. Thank you. All right. You have three minutes for rebuttal. Thank you, Your Honor. I'd like to make one point because, like my friend, I think we're sensing that the court has different opinions about sort of count one and count two. So I'd like to address the one that's concerning. Well, you're all reading our minds that have not conferred with each other. So we'll see how while you read minds. Okay. Yes. But anyways, given the limited time of my rebuttal, I'd like to just go directly to the excessive force on the handcuffing. If we're talking about minors, does that go up to age 18? Imagine this were consolidated cases from the 2-year-old that you posited all the way up to 17 and a half. Many 17-year-olds let's say commit murders and sometimes are tried in adult court. So where is the clearly established law that says at what age, if you're making an arrest based on probable cause, you can't put handcuffs on? What case can we look at that tells us there's a certain age where if you commit a crime, if you have probable cause to believe you've committed a crime and you're under arrest, that you can't put handcuffs on? Is it 11? Is it 12? Is it 14? Is it 16? Imagine we had consolidated cases here, one for every year from 2 to 18. Where would the court draw the line on that in terms of when you cannot put routine handcuffing on a minor, someone who's 18 years or younger? Well, we do have a case here though as opposed to the arrest component. There is the City of Sonora. We do have that case that gives some guidance that arguably we don't have a case on the arrest part of it. I mean, the City of Sonora does stand for things that are involved in this case on the excessive force. It is a case that touches on this. It touches on... It's at a school and it's an age, but it doesn't touch upon it in terms of the qualified immunity analysis. The recent Supreme Court cases say it has to squarely govern. And they weren't dealing in that case with police arresting someone based on probable cause and threatening behavior. That's not in that case. So that case doesn't squarely govern. It doesn't satisfy the demanding test of the Supreme Court. So your argument is that I guess the only way that we could find no qualified immunity here is by saying that this is just an exception. That this is just on its face. Anybody would know that you can't put handcuffs on a 10-year-old. Not that CB clearly establishes that. I agree with that, Judge Thomas. It has to fall into that very narrow range of obvious. They found it in CB v. Sonora, but there have been cases since then, and my 28-J letter cites it, that Sonora has been interpreted in a limited way, and it doesn't apply when there's probable cause to arrest and threatening behavior. So we have the Garcia case, and it cites Wade and everything. And Wade has all of those standards that the 9th Circuit is supposed to follow, those Supreme Court standards, which are kind of newer than the Pope v. Pelzer, which is much more forgiving in terms of qualified immunity, and that appellees rely on. The case has to squarely govern. It's only those who knowingly violate the law or a completely incompetent police officer. I don't think Officer Neves was either. I mean, there aren't allegations that show any of those. I will also point out that there's no allegations. All of my friends' arguments about what happened on the day before in Ranch Dressing, there's no allegations that the officers had any knowledge of that, that they were told that. I don't think we appear to have any additional questions, so this matter will be submitted. Thank you both for your argument in this matter. Thank you. This court is in recess for the week. Thank you. Thank you.
judges: CALLAHAN, HURWITZ, THOMAS